1836 CALLOWHILL STREET
t/a Mirabelle, et al.

v.

JOHNSON CONTROLS, INC., et al.

Civ. A. No. 91–7643.

United States District Court,
E.D. Pennsylvania.

April 28, 1993.

Donna L. Adelsberger, Krusen Evans & Byrne, Philadelphia, PA, for plaintiff.

Richard M. Simins, Montgomery McCracken Walker & Rhoads, Philadelphia, PA, for defendant Johnson Controls, Inc.

Margaret L. Loud, Kaufman, Coren & Ress, Philadelphia, PA, for defendant The Trane Co.

## MEMORANDUM

LUDWIG, District Judge.

Defendants Johnson Controls, Inc. and The Trane Company move for summary judgment. Fed.R.Civ.P. 56.[1]

This is an action for property damage that occurred on December 31, 1989 when the failure of a heating system manufactured by defendant The Trane Company caused sprinkler pipes to freeze and burst in the cold weather. Plaintiffs are the owners and an insurer of the premises at 1836 Callowhill Street, Philadelphia, and the owners of a neighboring apartment building. The particular mechanism responsible for the breakdown was an ignition control that had been manufactured by defendant Johnson Controls, Inc. The complaint sounds in strict liability and negligence for failure to warn and to test.

### I.

Since 1966, Pennsylvania has recognized a cause of action in strict products liability under section 402A of the Restatement (Second) of Torts.[2] *See Rogers v. Johnson & Johnson Products, Inc.*, 523 Pa. 176, 181, 565 A.2d 751, 754 (1989) (*citing Webb v. Zern*, 422 Pa. 424, 220 A.2d 853

---

1. Summary Judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The movant has the burden of showing that there is no triable issue. The opposing party must point to specific, affirmative evidence in the record—and not simply rely on allegations or denials in the pleadings—in order to defeat a properly supported motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Williams v. West Chester*, 891 F.2d 458, 464 (3d Cir.1989).

2. In a diversity action, a federal court applies the choice of law provisions of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *General Star Nat'l. Ins. Co. v. Liberty Mut. Ins. Co.*, 960 F.2d 377, 379 (3d Cir.1992). Given the choice of law rules of Pennsylvania and the governmental interest analysis mandated by the Pennsylvania Supreme Court's decision in *Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 203 A.2d 796 (1964), Pennsylvania substantive law applies, inasmuch as all of the plaintiffs are Pennsylvania residents and the injury occurred in Pennsylvania. *See Stutzman v. Syncro Machine Co.*, 1991 WL 66796, at *1, 1991 U.S. Dist. LEXIS 5308, at *4 (E.D.Pa. April 18, 1991).

(1966)).[3]   A plaintiff presents a *prima facie* case of strict liability by showing that the product was defective and that the defect caused the injury. *Rogers*, 523 Pa. at 182, 565 A.2d at 754. Where direct evidence of a particular defect cannot be offered, a plaintiff may rely instead on evidence of product malfunction. *Id.; Barris v. Bob's Drag Chutes & Safety Equipment, Inc.*, 685 F.2d 94, 101 (3d Cir.1982) (applying Pennsylvania law). When proceeding on a malfunction theory, a plaintiff must prove: 1) product malfunction; 2) the absence of abnormal use; and 3) the absence of reasonable secondary causes. *Rogers*, 523 Pa. at 182, 565 A.2d at 754. "[T]he malfunction theory in no way relieves the plaintiff of the burden of proving a defect: it simply allows him to show that a defect is the most likely explanation for an accident by eliminating other reasonable explanations." *Ocean Barge Transport Co. v. Hess Oil Virgin Islands Corp.*, 726 F.2d 121, 125 (3d Cir.1984). In other words, the malfunction theory is a rule of evidence.

## II.

### A.

■   Here, the initial dispute is whether plaintiffs have pointed to a specific defect or are relegated to a malfunction theory. This disagreement focuses on the affidavit of plaintiffs' expert, Martin M. Van Adelsberg. According to plaintiffs, the affidavit specifically identifies a defect in the ignition control component of the heating unit.[4]   Defendants' initial position is that the affidavit is not worthy of consideration under Rule 56(e) because the affiant has not been qualified as an expert.[5]   This argument must be rejected. A nonmoving party may use affidavits in opposition to a summary judgment motion. An expert's affidavit, although not based on personal knowledge as is generally required under Rule 56(e), is eligible for summary judgment consideration if the affiant would be qualified to give the expert opinion at trial. *See Shaw v. Strackhouse*, 920 F.2d 1135, 1139 (3d Cir.1990); *Paton v. La Prade*, 524 F.2d 862, 870 (3d Cir.1975); *Backes v. Valspar Corp.*, 783 F.2d 77, 79 (7th Cir.1986). Defendants have not suggested that Van Adelsberg would be unqualified to testify as an expert and have not contested his credentials or expertise in the field.[6]

■   Although Van Adelsberg's report may lack specificity, it raises a triable issue as to the existence of a defect at the time the

**3.**   The Restatement provides in part:

> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
> (a) the seller is engaged in the business of selling such a product, and
> (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold ...

Restatement (Second) of Torts, § 402A (1965).

**4.**   Van Adelsberg's report, incorporated by reference in his affidavit, states:

> It is apparent that the STFR windings could not maintain their integrity and the insulation on some of the wires of the secondary (high voltage) windings overheated with the resultant damage to the wire insulation. As a result, electrical contact between the wires of the windings occurred thereby physically reducing the number of windings.... It is clear that the cause for this breakdown can be attributed to the circuit design which allowed overheating of the windings due to improper circuit design.

Plaintiffs' supplemental response of February 17, 1993, Exh. A, at 3. The report concludes:

> In particular, it is my Professional Engineering opinion that the subject Johnson Ignition Controller (ICO) model G60 PAG–1, was defective in its electronic circuit design which allowed the Spark Transformer to overheat and malfunction. This overheating allowed the insulation of the windings to melt and make contact/electric short between the wires of the windings. As a result, the Turns Ratio of this STFR was drastically reduced and unable to produce the required high voltage at the high voltage (arc) terminal.

*Id.*

**5.**   In diversity cases, the admissibility of expert testimony is governed by the Federal Rules of Evidence. *See Salas v. Wang*, 846 F.2d 897, 906 (3d Cir.1988); *Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265, 280 (5th Cir.1987). The expert's qualifications are determined by the court. *See* Fed. R.Evid. 104(a).

**6.**   Plaintiffs identified Van Adelsberg as their expert as early as September 1992. *See, e.g.*, Plaintiffs' response of September 17, 1992, Exh. A; Defendant Trane's reply of September 21, 1992, at 2.

product was sold. Whether plaintiffs will rely solely on direct evidence at trial or also on circumstantial evidence of product malfunction need not be considered at this time. Plaintiffs are not required to elect one theory to the exclusion of the other, *i.e.*, specific defect or malfunction. In an ordinary tort case, a plaintiff may prove specific negligence combined with a *res ipsa loquitur* claim. *See Stewart v. Ford Motor Company*, 553 F.2d 130, 141 (D.C.Cir.1977) (case submitted to jury on alternative grounds of specific defect and *res ipsa loquitur); see also Evidence of Specific Negligence as Affecting Reliance on Res Ipsa Loquitur*, 33 A.L.R.2d 791, 795 (1954). The malfunction theory has been analogized to *res ipsa loquitur* in that both are rules of evidence rather than distinct causes of action. Both allow the fact-finder to draw an inference that a defect existed in the product as originally sold. *See* Schwartz, *New Products, Old Products, Evolving Law, Retroactive Law*, 58 N.Y.U.L.R. 796, 829 (October 1983). Similarly, a product liability plaintiff should be permitted to proceed on alternative theories of specific defect and malfunction. *See* Schwartz, *New Products*, 58 N.Y.U.L.R. at 835. At trial, the particular thrust of Van Adelsberg's opinion may become more intelligible and more consistent with one approach than the other.

### B.

■■ Defendant Johnson Controls maintains that plaintiffs should not be permitted to proceed on a malfunction theory because the product was operational for a "prolonged trouble-free" period. *See Woelfel v. Murphy Ford Co.*, 337 Pa.Super. 433, 436, 487 A.2d 23, 24 (1985). Prolonged trouble-free use may give rise to an inference that the defect did not exist "at the time the product left the defendant's control." *Roselli v. General*

*Electric Co.*, 410 Pa.Super. 223, 229, 599 A.2d 685, 688 (1991), *appeal granted*, 530 Pa. 645, 607 A.2d 255 (1992). However, that circumstance alone will not preclude recovery. As stated by the Pennsylvania Supreme Court almost two decades ago:

> We recognize that, as a general rule, "prolonged use of a manufactured article is but one factor, albeit an important one, in the determination of the factual issue whether [a defect in design or] manufacture proximately caused the harm" ... The age of an allegedly defective product must be considered in light of its expected useful life and the stress to which it has been subjected.

*Kuisis v. Baldwin–Lima–Hamilton Corp.*, 457 Pa. 321, 336, 319 A.2d 914, 923 (1974). This approach is binding—and well reasoned. Plaintiffs offered evidence that the Trane heating unit had an expected useful life of 15 years. Experts for both plaintiffs and defendant Trane believed the ignition control should have lasted at least that long. The ignition control is alleged to have malfunctioned after only six years despite no intervening disassembly, repair, or inspection. Given these circumstances, there is a triable issue on the malfunction theory of products liability even if plaintiffs fail to prove the existence of a specific defect.[7]

### C.

■ Defendant Trane also asserts that it was merely an end-line assembler: Having not designed the ignition control, it should not be held liable for any defect in that component. A final assembler is not subject to *primary* liability unless, in the assembly process, it substantially changes the part so as to render it defective.[8] *Burbage v. Boiler Engineering and Supply Co.*, 433 Pa. 319, 325, 249 A.2d 563, 566 (1969). However, that

---

7. Trane argues that the allegedly defective ignition control has not been shown to be the one installed by Trane in assembling the heating unit. This is not persuasive. It is undisputed that the serial numbers on the ignition control date back to 1983, the year the heating unit was sold. Defendants themselves argue that the heating unit functioned "trouble-free" since purchase, and there is no evidence suggesting that the ignition control was replaced prior to December 31, 1989.

8. It is undisputed that the ignition control was a factory-sealed, solid state unit that Trane received from Johnson Controls and installed without modification in the heating unit. For this reason, Trane's argument that it can not be primarily liable for a defect in the ignition control may have merit. However, that question is not decided here.

Trane's liability may be secondary in nature does not compel dismissal of the action against it. Recovery may be had against a final assembler for malfunction of a part so long as that part was expected and intended to be "attached thereto." *D'Antona v. Hampton Grinding Wheel Company*, 225 Pa.Super. 120, 124–25, 310 A.2d 307, 309–10 (1973) (manufacturer of wheel may be liable for malfunction of part of wheel manufactured by someone else); *see also Sochanski v. Sears, Roebuck & Co.*, 689 F.2d 45, 50 (3d Cir.1982) (Sears subject to liability, though secondary, for selling defective tire manufactured by Goodyear). Moreover, actions for indemnification themselves presuppose the validity of holding secondary tortfeasors subject to liability. *See, e.g., Burch v. Sears, Roebuck and Company*, 320 Pa.Super. 444, 459, n. 5, 467 A.2d 615, 623 n. 5 (1983).

### III.

■■■■■■ Plaintiffs' claims against Trane for negligent failure to warn, under section 388 of the Restatement (Second) of Torts, cannot be sustained.[9] In *Walton v. AVCO Corp.*, 530 Pa. 568, 610 A.2d 454, 458–59 (1992), it was held that an end-line manufacturer has an independent duty to warn of a defective part only if the end-line assembler knew or had reason to know of the defect. Plaintiffs and Trane agree that the ignition control had an expected life of 10–15 years and that the occurrence of a defective failure within this period was unpredictable. Plaintiffs admit:

> The ignition control is similar to a light bulb—it works and then one day, it doesn't work. There is no way to predict in advance when the control will fail.

---

**9.** Adopted in Pennsylvania, *see Dauphin Deposit Bank & Trust Co. v. Toyota Motor Corp.*, 408 Pa.Super. 256, 266, 596 A.2d 845, 850 (1991) (*citing Incollingo v. Ewing*, 444 Pa. 263, 288 n. 9, 282 A.2d 206, 220 n. 9 (1971)), § 388 provides:

One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probably use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

Plaintiffs' response of September 17, 1992, at 5. Plaintiffs offered no evidence that Trane knew or should have known that the ignition control was defective.

A failure to warn claim against Johnson Controls is also unsupportable. In a strict products liability case, a duty to warn adheres where the manufacturer has "knowledge, or by the application of reasonable, developed human skill and foresight should have knowledge, of the presence of the ingredient and the danger." Restatement (Second) of Torts, § 402A (1965), comment j. *See Baldino v. Catagna*, 505 Pa. 239, 247, 478 A.2d 807, 811 (1984). There is no evidence that Johnson Controls knew or should have known of any defect of which it could have given warning. In response to Johnson Controls' summary judgment motion, plaintiffs argue that Johnson Controls should have known of the defect, since it "has had prior claims involving its G–60 ignition control for the same type of failure (i.e., water damage due to frozen pipes)." Plaintiffs' response of October 2, 1992, at 3. On the present record, this argument is not fact-based. A fact set forth for the first time in a brief may not be considered on a Rule 56 motion. *See Transurface Carriers, Inc. v. Ford Motor Co.*, 738 F.2d 42, 46 (1st Cir.1984); *Goodway Marketing, Inc. v. Faulkner Advertising Associates, Inc.*, 545 F.Supp. 263, 268 n. 3 (E.D.Pa.1982). Accordingly, there is no triable issue on the failure to warn claim.[10]

### IV.

■■■■■■ Plaintiffs' negligent failure to test claim, to the extent that it is separate and distinct from failure to warn, should also be dismissed. Negligent failure to test is cogni-

(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous. Restatement (Second) of Torts § 388 (1965).

**10.** In light of this decision, it is unnecessary to reach the question whether the absence of warnings was the legal cause of the property damage.

zable as a common law negligence theory. Here, its elements are: (1) that defendant(s) had a duty to test the ignition control to ensure that it would last at least as long as the heating unit; (2) that defendant(s) breached that duty; (3) that the breach was the legal cause of the damage to plaintiffs' property. *See Dauphin Bank & Trust Co. v. Toyota Motor Corp.*, 408 Pa.Super. 256, 265, 596 A.2d 845, 849–50 (1991); *Toth v. Economy Forms Corp.*, 391 Pa.Super. 383, 389, 571 A.2d 420, 423 (1990). Assuming, without deciding, that both Trane and Johnson Controls had a duty to test the ignition control to predetermine its expected useful life,[11] plaintiffs have not offered sufficient evidence of a breach of that duty that would create a genuine dispute of fact. In order to establish a triable issue of fact, a non-movant, bearing the burden of proof at trial, can not rely on the pleadings. *First National Bank v. Lincoln National Life Ins. Co.*, 824 F.2d 277, 280 (3d Cir.1987), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Plaintiffs have not offered evidence, for example, of the testing procedures performed by Johnson Controls during the manufacturing process—or of the lack of testing. Without such affirmative evidence, there is no genuine issue of material fact to be decided on plaintiffs' negligent failure to test claim.

### ORDER

AND NOW, this 28th day of April, 1993, summary judgment as to both defendants The Trane Company and Johnson Controls, Inc. is denied as to the strict products liability claims, and granted as to the negligence claims.

11. It is questionable whether plaintiffs have shown any duty on the part of Trane. Plaintiffs admit that because Trane received the ignition control from Johnson Controls as a factory-sealed component with instructions not to disassemble it, its design "prevented testing for component deterioration thereby making it impossible to predict failure of the unit/components." *See* Plaintiffs' answers to expert interrogatories, attached to Plaintiffs' memorandum of September 17, 1992, Exh. A, at 2.