Christine J. JOBIN, Trustee for the bankruptcy estate of M & L Business Machines Co., Inc., Plaintiff,

v.

The RESOLUTION TRUST CORPORATION, as conservator of Capitol Federal Savings and Loan Association of Denver, as receiver of Capitol Federal Savings and Loan Association of Denver, as conservator of Capitol Federal Savings and Loan Association and as receiver of Capitol Federal Savings and Loan Association, Defendant.

Civ. A. Nos. 92–K–1467, 92–K–1623.

United States District Court,
D. Colorado.

Oct. 8, 1993.

Christine Jobin, Denver, CO, for plaintiff.

Maria Krieger, Englewood, CO, Maria Flora, Denver, CO, for defendant.

## ORDER ON MOTION FOR PARTIAL SUMMARY JUDGMENT AND MOTION TO STRIKE

KANE, Senior District Judge.

Christine J. Jobin, trustee for the estate of M & L Business Machines Company, Inc. ("Trustee"), brings this action against the Resolution Trust Corporation, in its capacity as receiver and conservator of Capitol Federal Savings and Loan Association of Denver ("Old Cap Fed") and its recreated entity, Capitol Federal Savings and Loan Association ("New Cap Fed"). She asserts eleven claims for relief generally relating to M & L's banking relationship with Old Cap Fed before it filed for bankruptcy.[1] This case has been consolidated with Civil Action No. 92–K–1623, in which the RTC seeks a declaration that its lien arising from a loan made to M & L and its bankruptcy claim based on that lien are valid.

The RTC moves for partial summary judgment on nine of the eleven claims the Trustee asserts in this proceeding (also plead as counterclaims in 92–K–1623), contending that they are barred by the *D'Oench, Duhme* doctrine and its statutory analog, 12 U.S.C. 1823(e). In addition, the RTC moves to strike portions of the affidavit of E. Jayne MacPhee and certain exhibits attached thereto, submitted by the Trustee in response to the motion for partial summary judgment. I grant the motion for summary judgment in part, deny it in part and deny the motion to strike.

### I. *Facts*

M & L Business Machines Company, Inc., a computer sales and leasing firm, filed for Chapter 7 bankruptcy protection on October 1, 1990. Shortly thereafter, it converted the case to a Chapter 11 reorganization. On December 18, 1990, Jobin was appointed Chapter 11 Trustee. In February 1991, she discovered that much of M & L's boxed inventory contained bricks and dirt and suspected that M & L's principals had used the corporation as a front for a Ponzi and/or check kiting scheme. On September 26, 1991, the Trustee converted the case to Chapter 7 liquidation. Since that date, the Trustee has commenced over 400 adversary proceedings seeking to recover assets for the benefit of the estate.

The Trustee commenced the instant adversary proceeding against the RTC in its capacities as conservator and receiver of Old

---

1. The RTC was named as conservator of Old Cap Fed by the Office of Thrift Supervision (OTS) on May 4, 1990. On June 15, 1990, the OTS appointed the RTC as receiver of Old Cap Fed, chartered New Cap Fed and appointed the RTC as the new institution's conservator. The same day, the RTC transferred the assets of Old Cap Fed to New Cap Fed. On July 12, 1990, the RTC became receiver of New Cap Fed.

While most of the allegations in the Trustee's complaint concern the actions of Old Cap Fed before the RTC's intervention on May 4, 1990, some address post-intervention transactions between the RTC and M & L. This motion concerns only pre-intervention claims.

Cap Fed and New Cap Fed. The RTC has asserted a claim against the estate in the amount of $5,896,828. In her amended complaint, the Trustee alleges that, in early 1987, M & L became a customer of Old Cap Fed, opening depository and operating accounts at the institution. M & L also entered into loan transactions with Old Cap Fed allegedly to restructure its debt and the debt of its principals and related entities, the Amtel corporation and the Tel–Cred corporation.

Old Cap Fed's relations with M & L began in the spring of 1987, when Tel–Cred, a Colorado corporation, purchased the assets of American Teledata ("Amtel") and assumed Amtel's obligations under a note to Old Cap Fed in the approximate amount of $3,044,000. The principal shareholders of Tel–Cred, Robert G. Joseph and Daniel F. Hatch, were also principals of M & L. Tel–Cred purchased Amtel allegedly based on representations by officials at Old Cap Fed, which later proved inaccurate, as to the value of Amtel's assets.

The Trustee contends that, when Tel–Cred became unable to service the Amtel note, Old Cap Fed permitted Tel–Cred to issue checks for payment on the note and to cover certain tax liens originally filed against Amtel, even though Tel–Cred's account with Old Cap Fed became substantially overdrawn. Then, faced with an impending examination by federal authorities, Old Cap Fed transferred amounts from M & L's account to cover the overdrafts, contrary to accepted banking practices.

On September 11, 1989, M & L obtained a $6,300,000 loan from Old Cap Fed to restructure the existing debts of M & L, Tel–Cred, and their shareholders (the "September 1989 Loan"). Under the terms of agreement evidencing the loan (the "1989 Loan Agreement"), M & L agreed to pay off an earlier debt to Old Cap Fed, purchased certain assets from Tel–Cred and sold software to it, subordinated to Old Cap Fed a $1,000,000 note from Tel–Cred to M & L and loaned funds to Robert Joseph to enable him to repay an outstanding loan from Old Cap Fed. The September 1989 Loan was secured by an interest in M & L's equipment, inventory, accounts, contract rights, chattel paper and general intangibles. Upon payment of the

September 1989 Loan, M & L was to move its accounts from Old Cap Fed to another institution. Tel–Cred likewise executed a term note in the face amount of $6,950,000. On December 30, 1989, M & L's revolving note was converted to a term basis and its maturity date was extended from September 11, 1989 to April 2, 1990.

The Trustee further alleges that Old Cap Fed routinely honored checks drawn on M & L's deposit account between September 1989 and February 1990, even though its officers knew that funds in the account were insufficient to cover the checks. By February 1990, the Trustee contends, M & L's account was overdrawn by more than $1.3 million dollars. The Trustee claims that Old Cap Fed then required M & L and Tel–Cred to pay down the deficiencies in their accounts. According to the Trustee, officials of Old Cap Fed knew or should have known that these payments, exceeding $1,800,000 dollars in the year before M & L's bankruptcy filing, were from the proceeds of a Ponzi scheme conducted by the corporation's principals. Nevertheless, in alleged disregard of internally-generated kiting suspicion reports and ignoring other indicia of the unusual nature of M & L's accounts, officials at Old Cap Fed continued to extend loans to M & L and its principals by honoring the overdrawn checks.

Finally, the Trustee maintains that in February 1990, the principals of M & L transferred the proceeds of a note executed in favor of the Bank of Boulder to cover overdrawn checks from M & L's Old Cap Fed account. In addition, these parties made five additional transfers, occurring in August and September 1990, to the RTC to cover past-due interest and principal on the M & L and Tel–Cred notes. The Trustee further alleges that the RTC accepted payments during June and July 1991, notwithstanding its knowledge of the alleged Ponzi scheme.

Based on the above allegations, the Trustee brings eleven claims for relief: (1) for a judicial determination under 11 U.S.C. § 506 as to the value of the RTC's lien and the extent to which it is secured, (2) for a declaratory judgment that any funds recovered by the Trustee under her strong-arm powers and any funds derived from private lenders

"are not proceeds of any alleged lien given by M & L to [Old Cap Fed] or to [the] RTC and not subject to any security interest," (Compl. ¶ 53), (3) for the avoidance of preferential transfers under § 547(b), (4) to recover fraudulent conveyances under § 548(a)(1), (5) to recover transfers made for insufficient value under § 548(a)(2), (6) to avoid fraudulent transfers under the strong-arm powers of § 544, (7) for declaratory relief that the September 1989 Loan is void for lack of consideration, (8) to obtain property of the estate under § 542, (9) for equitable subordination of RTC's claim against the estate under § 510(c)(2) based on breach of fiduciary duty, (10) for equitable subordination under § 510(c)(2) based on improper conduct, and (11) for imposition of a constructive trust on fraudulent transfers to Old Cap Fed or the RTC in the year preceding M & L's bankruptcy filing.

## II. *Motion for Partial Summary Judgment.*

### A. *D'Oench, Duhme and § 1823(e).*

■ This is not the first time I have considered the doctrine of estoppel established in *D'Oench, Duhme & Co. v. Federal Deposit Insurance Corporation,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), and its statutory counterpart, 12 U.S.C. § 1823(e). In *Resolution Trust Corporation v. Wellington Development Group,* 761 F.Supp. 731 (D.Colo.1991), I explained the genesis of these doctrines. Under *D'Oench, Duhme,* "regardless of the lack of an overt intent to deceive federal banking authorities, . . . a defendant may not set up a defense to the collection of a note based on an unrecorded understanding between it and a federally-insured institution." *Id.* at 735. This doctrine reinforces the federal government's role, as insurer of depository and savings institutions, to protect the interests of the public in those institutions by ensuring that the face value of an institution's assets cannot be devalued by secret agreements between it and its borrowers. *See id.* The doctrine covers not only agreements, schemes or arrangements, but any claim or defense which would tend to deceive banking authorities as to the value of assets it acquires. *Id.*

■ In 1950, Congress supplemented this doctrine by enacting 12 U.S.C. § 1823(e), which invalidates any agreement offered to diminish or defeat the government insurer's interest in assets it acquires unless the agreement is in writing, was executed as part of the original transaction between the claimant and the institution, was approved by the institution's board of directors and is an official record of the institution. While similar in many respects,

> the protection afforded by the doctrine and the statute are distinct. "[T]he statute *expands D'Oench, Duhme* in that it applies to any agreement, whether or not it was 'secret,' and regardless of the maker's participation in a scheme. At the same time, however, the statute is *narrower* than *D'Oench, Duhme* in that it applies only to agreements, and not to other defenses the borrower might raise."

*Id.* (citing Note, *Borrower Beware: D'Oench, Duhme and Section 1823 Overprotect the Insurer When Banks Fail,* 62 S.Cal.L.Rev. 253, 271–72 (1989)).

### B. *Threshold Issues of Applicability.*

■ In her response to the RTC's motion, the Trustee argues that the estoppel defense of *D'Oench, Duhme* and § 1823(e) do not bar the Trustee from asserting her rights under the Bankruptcy Code, relying on *Thistlethwaite v. FDIC (In re Pernie Bailey Drilling Co.),* 111 B.R. 565 (Bankr.W.D.La. 1990). In that case, the bankruptcy court determined that "the Trustee's avoiding powers under the Bankruptcy Code give the Trustee a federally created right to act on behalf of innocent creditors to avoid transfers," and that neither *D'Oench, Duhme* nor § 1823(e) have been interpreted to afford the government a defense to such federal claims. *Id.* at 574.

I reject the *Pernie Bailey* court's reasoning and agree with the RTC that the Bankruptcy Code and § 1823(e) should be interpreted in a way to give meaning to both. *See Negonsott v. Samuels,* 933 F.2d 818, 819 (10th Cir.1991). While the Trustee represents innocent creditors of the debtor, the RTC likewise acts on behalf of innocent de-

positors in the failed savings institution. Both entities are equally deserving of specialized tools to carry out their powers. Like the Trustee, the RTC "does not voluntarily step into the shoes of the bank; it is thrust into those shoes. It was neither a party to the original inequitable conduct nor is it in a position to take action to cure any associated defects or force the bank to pay for incurable defects." *FDIC v. O'Melveny & Meyers,* 969 F.2d 744, 751 (9th Cir.1992).

The *Pernie Bailey* court's observation that *D'Oench, Duhme* and § 1823(e) have not been applied to bar claims arising under federal law is inaccurate; in fact, other courts have applied the estoppel doctrine to bar such claims. *See, e.g., Diamond v. Union Bank & Trust of Bartlesville,* 776 F.Supp. 542 (N.D.Okla.1991) (anti-tying claim under 12 U.S.C. § 1972). *D'Oench, Duhme* and § 1823(e) focus on the nature of evidence admissible to diminish or defeat the government insurer's interests in assets from a failed institution, not whether the claim against the government is asserted under state or federal law. For this reason, I conclude, as have other courts, that *D'Oench, Duhme* and § 1823(e) apply in bankruptcy proceedings to estop a party from relying on an unwritten agreements outside the institution's records. *See, e.g., Capitol Bank & Trust Co. v. 604 Columbus Ave. Realty Trust (In re 604 Columbus Ave. Realty Trust),* 968 F.2d 1332, 1355 (1st Cir.1992); *Holt v. FDIC (In re CTS Truss, Inc.),* 868 F.2d 146, 150 (5th Cir.1989); *In re Woodstone Ltd. Partnership,* 149 B.R. 294, 297 (E.D.N.Y.1993); *cf. Gallant v. Kanterman (In re Kanterman),* 108 B.R. 432, 434 (S.D.N.Y.1989) ("If the debtor were involved in some 'secret agreement' with the lender, ... then the trustee would be estopped from asserting the terms of that secret agreement as a defense against the FDIC.").

■ The Trustee additionally argues that *D'Oench, Duhme* and § 1823(d) do not apply because the Trustee was not a party to the transactions between M & L and Old Cap Fed, citing *Park Tucson Investors Limited Partnership v. Ali,* 770 F.Supp. 531 (D.Ariz. 1991). In *Park Tucson,* the insolvent institution acquired certain notes as collateral for a loan to a hotel partnership. The notes were originally negotiated between the partnership and certain investors. The investors never dealt directly with the bank, nor did they contemplate the notes would ever be assigned as collateral for the loan. For these reasons, the investors were not precluded from asserting defenses based on the partnership's fraud and misrepresentation in the RTC's collection action.

Here, there was a direct relationship between M & L and Old Cap Fed. The Trustee represents the interests of M & L and its creditors in this proceeding. Moreover, as I noted above, *D'Oench, Duhme* and § 1823(e) concern the evidence used to defeat the government's interest, not who is attempting to do so. They apply to any party attempting to defeat the government's interest in assets acquired from a failed institution. *See Ajootian v. Lamont (In re Ajootian),* 119 B.R. 749, 755 (Bankr.E.D.Cal.1990) (statutory language of § 1823(e) mandates application to any person that could diminish or defeat the acquiring corporation's interest).

Finally, the Trustee asserts that "by filing a proof of claim in the M & L proceeding, the RTC has consented to the Bankruptcy Court's equitable jurisdiction and the full panoply of remedial measures that are available to the court in carrying out the goals of the Bankruptcy Code, including statutorily provided for equitable subordination." (Trustee's Br. Opp'n at 18.) This may be true, but one must nevertheless consider whether equitable subordination is proper and whether the Trustee is limited, under *D'Oench, Duhme* or § 1823(e), for introducing evidence outside of Old Cap Fed's records to demonstrate the institution's inequitable conduct. *See In re 604 Columbus Ave. Realty Trust,* 968 F.2d at 1359.

C. *Application of the Doctrines to Trustee's Claims.*

Although the RTC contends that *D'Oench, Duhme* and § 1823(e) broadly apply to the third through eleventh claims alleged by the Trustee, a claim-by-claim analysis shows this to be overreaching. In a nutshell, with respect to each of these nine claims, I must determine whether the Trustee seeks to in-

validate the RTC's claim based on the existence of a side, secret or unrecorded agreement, scheme or arrangement between Old Cap Fed and M & L or its principals. *See Bradford v. American Federal Bank, F.S.B.,* 783 F.Supp. 283, 285 (N.D.Tex.1991) (*D'Oench, Duhme* does not prohibit all defenses to FDIC's interest, only those based on scheme or arrangement likely to mislead banking authorities).

This determination is complicated by the Trustee's failure to specifically identify, as to each of her claims, the date, type and amount of each transfers or transaction she seeks to avoid. Instead, she simply refers to payments or transfers "as specifically set forth in the General Allegations of this Amended Complaint." (Compl. ¶ 55; *see also id.* ¶ 64, 68, 72, 82). Yet the general allegations contain a myriad of references various payments and transactions. Thus, with respect to the Trustee's third, fourth, fifth, sixth and eighth claims, I have difficulty discerning whether she refers to the September 1989 Loan, payments on that loan, payments from M & L to cover overdrafts in its deposit account, transfers from M & L's account to cover overdrafts of other entities, or post-petition transfers to the RTC. Notwithstanding the vagaries of the complaint, I undertake this determination.[2]

### 1. *Claims Under § 547(b).*

The Trustee asserts two claims under § 547(b): one for the recovery of preferential transfers to insiders within one year before M & L's bankruptcy filing, *see* 11 U.S.C. § 547(b)(4)(B), and the other for the recovery of preferential transfers within 90 days of filing, *see id.* § 547(b)(4)(A).[3] The RTC ar-

gues that these claims are barred by *D'Oench, Duhme* and § 1823(e) because, under § 547(b)(2), the Trustee must prove that the transfers were "for or on account of an antecedent debt owed by the debtor before such transfer was made," and she cannot do so based on the records of Old Cap Fed. The Trustee responds that bank records do reflect that these transfers—which she identifies as payments on overdraft checks—are on account of an antecedent debt. She notes that the overdrafts were reflected in DDA (demand deposit account) reports approved by the board of directors of Old Cap Fed.

Both parties miss the point. These claims are not dependant on the Trustee proving the existence of a secret arrangement or an unwritten agreement. *See First City Fin. Corp. v. FDIC (In re First City Fin. Corp.),* 61 B.R. 95, 97 (Bankr.D.N.M.1986) (§ 1823(e) not a bar to § 547 preference action where existence of secret agreement is not alleged); *La Mancha Aire, Inc. v. FDIC (In re La Mancha Aire, Inc.),* 41 B.R. 647, 648 (Bankr. S.D.Fla.1984) (doctrines don't apply to preference action "where no one is attempting to enforce a secret agreement"). M & L's "antecedent debt" arises from the fact that it had a depository account with Old Cap Fed and is obligated under general banking law and its depository agreement with the institution to cover any overdrawn checks. *See* 5A *Michie on Banks and Banking,* Ch. 9, § 114 at 341–42 (1983) (bank permits overdrafts on faith that it can apply general deposits to overdrawn amounts; its right to do so grows out of debtor and creditor relationship between bank and depositor, "the contract implied to exist from the relation of the parties and by operation of law"). Evi-

---

2. The RTC has filed a second motion for partial summary judgment, seeking among other things the dismissal of the Trustee's claims "insofar as they are based on overdraft transfers which the Trustee has failed to identify." I permitted the Trustee to withhold responding to the second motion until after I have ruled on this motion for partial summary judgment, and will consider this pleading issue at that time.

3. Since the RTC's motion addresses only preintervention transactions, I question whether the § 547(b)(4)(A) claim falls within the motion, since the RTC had already intervened at the time

the 90–day preferential period commenced. Nevertheless, I consider the RTC's arguments.

In addition, I am confused by the Trustee's § 547(b)(4)(B) claim. That section expands the preferential period to one year when the transfer is made to or for the benefit of a creditor who is also an insider. 11 U.S.C. § 547(b)(4)(B) (transfer avoidable within one year "if such creditor at the time of such transfer was an insider"). Here, the Trustee alleges that the transfers were made for the benefit of insiders Robert Joseph, Carol Joseph and Daniel Hatch, but it does not appear from complaint that these insiders are also creditors.

dence that M & L had an account with Old Cap Fed is clear from the institution's records. Therefore, the Trustee need not rely on any unwritten agreement to establish M & L's obligation to repay; accordingly, her § 547 claims are not barred under *D'Oench, Duhme* or § 1823(e).

### 2. *Fraudulent Conveyances Under § 548(a)(1) and 544(b).*

■ The RTC's next argument concerns the Trustee's fourth and sixth claims to recover fraudulent conveyances under § 548(a)(1) and § 544(b) (which incorporates state fraudulent conveyance law). The RTC maintains that "[i]n order to prevail on these claims, the Trustee must establish that pre-intervention transfers made by M & L to Old Capitol Federal were made with the specific intent to hinder, delay or defraud creditors." It contends that the Trustee cannot succeed on this issue because evidence of M & L's intent to defraud is not apparent in Old Cap Fed's official records. This contention is specious.

The Trustee does not rely on any secret or unwritten agreement between M & L and Old Cap Fed to prove her fraudulent conveyance claims. M & L's fraudulent intent arises from its intent to bilk investors through a Ponzi scheme; evidence of that intent need not come from Old Cap Fed's official records. Old Cap Fed may or may not have been aware of the scheme, but its culpability is irrelevant to the Trustee's fraudulent conveyance claims. *See* 4 *Collier on Bankruptcy* ¶ 548.02 at 548–36 (L. King 15th ed. 1993) ("Because absence of the transferee's good faith is no longer part of the proof of the existence of a fraudulent conveyance, the trustee need not show that fact before he can establish a prima facie case."); *cf.* 11 U.S.C. § 548(c) (providing defense for innocent transferee in fraudulent transfer).

■ Taking the RTC's argument to its logical conclusion, the RTC would require that every element of the Trustee's claims in this adversary preceding be proven by evidence in Old Cap Fed's official records. That is simply not necessary under *D'Oench, Duhme* and § 1823(e). All that is required is

that the Trustee not seek to reduce or nullify the RTC's interest by alleging a secret arrangement or scheme or an unwritten agreement between M & L and Old Cap Fed. *See In re Kanterman,* 108 B.R. at 434 (fraudulent conveyance claims not barred unless trustee relies on unwritten agreement). She does not do so here.

### 3. *Transfer for Less than Reasonably Equivalent Value Under § 548(a)(2).*

■ The RTC raises similar concerns with respect to the Trustee's claim under § 548(a)(2), in which she seeks to recover transfers for which M & L allegedly received less than reasonably equivalent value. The RTC asserts that the Trustee cannot demonstrate lack of reasonably equivalent value from Old Cap Fed's loan records; therefore, this claim is barred under *D'Oench, Duhme* and § 1823(e). Again, I disagree.

■ Whether a transfer is made for reasonably equivalent value is a question of fact to be determined from all the evidence in a particular case. *See Cooper v. Ashley Communications, Inc. (In re Morris Communications NC, Inc.),* 914 F.2d 458, 466–67 (4th Cir.1990); *First Nat'l Bank in Anoka v. Minnesota Util. Contracting, Inc. (In re Minnesota Util. Contracting, Inc.),* 110 B.R. 414, 419 (D.Minn.1990). "Value" includes satisfaction of an antecedent debt. *See Diamant v. Hansen (In re Curry & Sorensen, Inc.),* 112 B.R. 324, 326 (Bankr.9th Cir. 1990). Transfers made to benefit third parties generally are not made for reasonably equivalent consideration. *See Gough v. Titus (In re Christian & Porter Aluminum Co.),* 584 F.2d 326, 337 (9th Cir.1978); *Unsecured Creditors' Comm. v. Banque Paribas (In re Heartland Chems., Inc.),* 103 B.R. 1012, 1017 (Bankr.C.D.Ill.1989) (transfer to affiliate). On the other hand, repayment for money received is not fraudulent. *See Harman v. First Am. Bank of Maryland (In re Jeffrey Bigelow Design Group, Inc.),* 956 F.2d 479, 485 (4th Cir.1992).

Here, by arguing that M & L received full consideration for the September 1989 Loan and overdraft payments, the RTC focuses on the merits of whether the Trustee can show

lack of reasonably equivalent value, not on whether she should be precluded from introducing evidence concerning a secret or unwritten arrangement between M & L and Old Cap Fed. The Trustee asserts that language in 1989 Loan Agreement, reciting the September 1989 loan was made to restructure the debts of other entities and individuals, and banking records of Old Cap Fed, showing that M & L funds were transferred to cover overdrafts of other entities, will establish lack of reasonably equivalent value. Therefore, because she does not assert lack of reasonably equivalent value based on an unwritten collateral agreement, her § 548(a)(2) claim is not barred by *D'Oench, Duhme* or § 1823.

### 4. *Declaratory Judgment that September 1989 Loan is Void for Lack of Consideration.*

■ In her seventh claim for relief, the Trustee seeks a judicial determination that the September 1989 Loan is void for lack of consideration to the extent the funds thereunder were used to pay the indebtedness of entities other than M & L. The same conclusion holds for this claim. The Trustee maintains that she can prove lack of consideration based on the 1989 Loan Agreement itself and other written documents in the loan file. She is entitled to attempt to do so. Lack of consideration and other defenses to the validity of an asset of a federally-insured financial institution may be established by evidence in the formal and board-approved records of the institution. *Cf. Resolution Trust Corp. v. Juergens,* 965 F.2d 149, 155 (7th Cir.1992); *FDIC v. Gettysburg Corp.,* 760 F.Supp. 115, 117 (S.D.Tex.1990), *aff'd,* 952 F.2d 400 (5th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 70, 121 L.Ed.2d 36 (1992).

### 5. *Turnover of Property of the Estate Under § 542.*

■ In her eighth claim for relief, the Trustee alleges that, to the extent that any transfers by M & L are avoided under other statutory sections, she is entitled to recover this property as property of the estate under § 542. This occurs by operation of law. *See* 11 U.S.C. § 541(a)(3), 550(a)(1). The con-

straints of *D'Oench, Duhme* and § 1823(e) are irrelevant to this claim.

### 6. *Equitable Subordination.*

■ The RTC's next argument is that the Trustee's ninth and tenth claims for equitable subordination of the RTC's interest are barred under *D'Oench, Duhme* and § 1823(e) because the Trustee has presented no evidence to indicate a genuine issue of material fact that Old Cap Fed was an insider or otherwise acted inequitably. I agree.

■ Under § 510(c) of the Bankruptcy Code, the bankruptcy court is specifically authorized to apply principles of equitable subordination. For this judicially developed doctrine to apply,

(1) The claimant must have engaged in some type of inequitable conduct.

(ii) The misconduct must have resulted in injury to the creditors of the bankrupt or conferred an unfair advantage on the claimant.

(iii) Equitable subordination of the claim must not be inconsistent with the Bankruptcy Act.

*In re 604 Columbus Ave. Realty Trust,* 968 F.2d at 1355. Nevertheless, this doctrine is subject to the constraints of *D'Oench, Duhme* and § 1823(e). *Id.*

Here, the Trustee alleges that Old Cap Fed "exercised dominion and control over the financial transactions of M & L," (Compl. ¶ 84), was an insider or fiduciary of M & L, (*id.* ¶ 85), and acted inequitably and improperly in its dealings with M & L to the detriment of the corporation and its other creditors, (*id.* ¶ 88). In addition, the Trustee generally alleges Old Cap Fed misrepresented the value of Amtel's assets to Tel–Cred to induce it to assume Amtel's obligations. (*See* Compl. ¶ 16.) The RTC contends that nothing in Old Cap Fed's records indicates this to be true.

■ In response to the RTC's motion for summary judgment, the Trustee points to no admissible evidence to support her claim that Old Cap Fed was an insider or fiduciary of M & L. The Trustee may not rest on her pleadings but must set forth specific facts

showing there is a genuine issue for trial as to Old Cap Fed's status as an insider or a fiduciary on these questions. *See Applied Genetics Int'l, Inc. v. First Affiliated Secs., Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990). Under Colorado law, in the absence of special circumstances, " 'the legal relationship between a lending institution and its customer is that of debtor and creditor.' " *See RTC v. Wellington Dev. Group,* 761 F.Supp. at 737 (citing *Dolton v. Capitol Federal Sav. & Loan Ass'n,* 642 P.2d 21, 23 (Colo.App.1982)). Nothing in the 1989 Loan Agreement or other documents of record lends a suggestion that the relationship between Old Cap Fed and M & L was anything other than that of a creditor and debtor.

Furthermore, the Trustee offers that Cap Fed acted inequitably because it should have realized that the pattern of M & L's banking pointed to the existence of a Ponzi scheme and that its conduct in continuing to extend loans to M & L by honoring overdrafts increased the losses to innocent investors in the scheme. Again, the Trustee's "conduct" argument fails under *D'Oench, Duhme* and § 1823(e). *See id.* at 736. Even if the Trustee could establish that officers at Old Cap Fed were aware of M & L's illegal activities, the institution's knowledge of the Ponzi scheme cannot bar the RTC's defense under *D'Oench, Duhme* and § 1823(e) unless it is reflected in a written understanding. *See Adams v. Madison Realty & Dev., Inc.,* 937 F.2d 845, 857–58 (3d Cir.1991); *Demakes Enter., Inc. v. FDIC (In re Demakes Enter., Inc.),* 143 B.R. 304, 309 (Bankr.D.Mass.1992) (evidence of institution's inequitable conduct must be based on failed bank's records to support equitable subordination claim); *FDIC v. Figge (In re Figge),* 94 B.R. 654, 667–69 (Bankr.C.D.Cal.1988) (evidence that bank president knew of borrowers' scheme to violate federal banking regulations barred under *D'Oench*), *aff'd,* 928 F.2d 1136 (9th Cir.1991). Because the Trustee attempts to rely on evidence Old Cap Fed's conduct, its misrepresentations and other unwritten understandings between it and M & L, its

principals and affiliates, her claims for equitable subordination are barred.

### 7. *Constructive Trust.*

█ In her eleventh claim, the Trustee seeks the imposition of a constructive trust on any transfers made to Old Cap Fed in the year preceding M & L's bankruptcy because it knew or should have known that M & L was conducting a Ponzi or check kiting scheme and such transfers were made in fraud of creditors. For the reasons stated above, this claim is clearly barred by *D'Oench, Duhme.* The RTC's interest cannot be defeated based on Old Cap Fed's failure to exercise care in handling M & L's account by not recognizing evidence of M & L's alleged Ponzi or check kiting scheme. *See New Maine Nat'l Bank v. Seydler,* 765 F.Supp. 770, 774 (D.Me.1991). I grant the RTC's motion for summary judgment on this claim.

### III. *Motion to Strike.*

In its second motion, the RTC moves to strike all but the last three sentences of the affidavit of E. Jayne MacPhee,[4] plus three exhibits attached to the affidavit. MacPhee was appointed by the bankruptcy court to assist the Trustee in reconstructing and analyzing M & L's complex business transactions. The Trustee submitted MacPhee's affidavit in response to the RTC's motion for partial summary judgment. The RTC argues that MacPhee's affidavit is defective under Fed.R.Civ.P. 56(e), which requires that affidavits in support or in opposition to a motion for summary judgment "be made on personal knowledge" and "set forth such facts as would be admissible in evidence." The RTC contends that MacPhee has no personal knowledge of M & L's business affairs and relies on the hearsay statements of third parties. I deny the motion.

█ A nonmoving party may rely on the affidavit of an expert in opposition to a motion for summary judgment if the expert

---

4. These sentences are contained in the "Conclusion" section of MacPhee's affidavit, in which she provides her opinion that M & L was operated as a Ponzi and check kiting scheme, that it incurred debts and made transfers outside of the ordinary course of business and was insolvent in the year preceding its bankruptcy filing.

would be qualified to give his or her opinion at trial. *1836 Callowhill Street v. Johnson Controls, Inc.*, 819 F.Supp. 460, 462 (E.D.Pa. 1993); *see, e.g., Thrasher v. B & B Chem. Co.*, 2 F.3d 995, 997–98 (10th Cir.1993). A court may not exclude an expert's affidavit solely because it is not based on personal knowledge. *Shaw v. Strackhouse*, 920 F.2d 1135, 1139 (3d Cir.1990). When an expert reviews relevant data provided to him about the case, his analysis and opinion based on that data satisfies the personal knowledge requirement. *See M & M Med. Supplies & Serv., Inc. v. Pleasant Valley Hosp.*, 981 F.2d 160, 164 (4th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2962, 125 L.Ed.2d 662 (1993). Furthermore, Fed.R.Evid. 703 "broadens the acceptable bases for expert testimony by allowing an expert to base an opinion on hearsay and other evidence not admissible in court," so long as the evidence is of a type reasonably relied on by experts in the field. *Ambrosini v. Labarraque*, 966 F.2d 1464, 1466 (D.C.Cir.1992). Expert affidavits based on such hearsay are admissible under Rule 56(e). *Id.; see also Bieghler v. Kleppe*, 633 F.2d 531, 533 (9th Cir.1980). On the other hand, wholly conclusory affidavits which fail to identify the reasoning upon which an expert opinion is based do not comply with Rule 56(e). *M & M Med. Supplies*, 981 F.2d at 164; *see also Orthopedic & Sports Injury Clinic v. Wang Lab., Inc.*, 922 F.2d 220, 224–25 (5th Cir.1991).

MacPhee's affidavit complies with the above requirements. She sets forth her qualifications as an expert and identifies in detail the facts upon which she bases her conclusions. The RTC's attempt to reduce the affidavit to its bare bones conclusion would render MacPhee's affidavit unacceptable under Rule 56(e). Its motion to strike is denied. Accordingly,

IT IS ORDERED THAT the RTC's motion for summary judgment is GRANTED as to the Trustee's ninth, tenth and eleventh claims and DENIED as to the Trustee's third, fourth, fifth, sixth, seventh and eighth claims for relief, and

IT IS FURTHER ORDERED THAT the RTC's motion to strike portions of E. Jayne MacPhee's affidavit is DENIED.