484 A.2d 797

**EAST TEXAS MOTOR FREIGHT, DIAMOND DIVISION**

v.

**David H. LLOYD, Appellant.**

Superior Court of Pennsylvania.

Submitted Feb. 24, 1984.

Filed Nov. 16, 1984.

---

466

William T. Hast, Assistant District Attorney, York, for appellant.

Daniel W. Shoemaker, York, for appellee.

Before SPAETH, President Judge, and CIRILLO and CERCONE, JJ.

CERCONE, Judge:

Appellant, David H. Lloyd, an independent trucker, entered into an agreement with appellee, East Texas Motor Freight (East Texas). Lloyd, using his own tractor-trailer combination, agreed to haul a load of insulation owned by Monsanto Corporation from California to Ohio. The trip lease agreement between the parties provided in pertinent part:

> In the event of any loss or damage or destruction to cargo or property damage or bodily injury to any third person, the Lessor does hereby agree to assume and be fully responsible for any such damage and in the event payment shall be made by the Lessee herein, Lessor does hereby agree to indemnify and hold the Lessee harmless for any and all claims. In the event the Lessee's insur-

ance company is required to make payment therefore, then, and in that event, the insurance company shall be subrogated to the rights of the Lessee against the Lessor herein.

In route to his destination, Lloyd encountered a severe rainstorm which damaged his load. East Texas paid Monsanto's claim for the damage incurred and then sought indemnification from Lloyd. Lloyd refused.

East Texas filed a complaint in assumpsit against Lloyd and Lloyd filed an answer, new matter, and a counterclaim. The case went to trial before a jury. At the conclusion of Lloyd's case, the court directed a verdict in favor of East Texas. Post-trial motions were filed and argued before the court *en banc* and subsequently denied. Judgment was entered and appellant perfected this appeal.

On appeal, Lloyd claims that the entry of a directed verdict improperly removed five issues from the jury's consideration. In reviewing such allegations we must keep in mind that:

> In an appeal from a directed verdict, the Appellate Court must consider the evidence and all reasonable inferences in the light most favorable to the appellant. *Litwinko v. Gray*, 267 Pa.Super. 541, 407 A.2d 42 (1979). If a jury could have reasonably concluded on the basis of that evidence and those inferences that liability should rest with the appellee, then the decision to direct a verdict was in error. *See Cox v. Equitable Gas Co.*, 227 Pa.Super. 153, 324 A.2d 516 (1974). If there is any room for doubt, the trial court should not direct a verdict. *Stephens v. Carrara*, 265 Pa.Super. 102, 401 A.2d 821 (1979).

*Lattanze v. Silverstrini*, 302 Pa.Superior Ct. 217, 220, 448 A.2d 605, 606 (1982). The trial court concluded that the questions involved dealt with the application of law to the facts, and therefore, a directed verdict was proper. *See Corson v. Corson's Inc.*, 290 Pa.Superior Ct. 528, 434 A.2d 1269 (1981). As we find that two of the issues should have been permitted to go to the jury, we are constrained to reverse.

Before addressing the various contentions, a brief summary of the parties' respective conduct is necessary. An agent of East Texas approached Lloyd, owner and operator of the type of trailer desired by East Texas. East Texas could load more insulation on Lloyd's trailer than on other types of trailers. Lloyd indicated that while he was willing to make the run, he had insufficient tarpaulin to protect the whole load. East Texas, therefore, sold additional tarp to Lloyd, deducting the cost from the advance money paid to Lloyd for the trip. Lloyd observed that such tarp was of a lesser quality then his own, but since the trip did not pay that much, he did not complain.

Appellant's first claim, concerning liability, is that East Texas' negligence, in selecting an open-bed truck and providing him with poor quality tarpaulin, rendered the indemnification clause void. Both parties agree that *Urban Redevelop. Auth. v. Noralco Corp.*, 281 Pa.Superior Ct. 466, 422 A.2d 563 (1980) is the leading case on point. There we held that a building owner was entitled to be indemnified by a demolition contractor pursuant to an indemnity clause. One of the contractor's employees, who was injured during the performance of the demolition, sued the owner for his injuries. We found that the owner was "merely passively negligent" and therefore it was entitled to indemnification.[1]

■ As to appellant's first point, we find it unnecessary to address his interesting argument that East Texas was negligent in hiring his truck. The trial court observed that he "never seriously argued [the] proposition, [sic] and never aduced the slightest evidence in that regard...." We agree. Appellant proceeded on a theory that the damage resulted from the tarp provided by East Texas.

On appeal a party may not rely on a theory which was not presented at trial. *See Weyandt v. Restaneo*, 461 Pa. 245, 336 A.2d 268 (1975); *Bucci v. R.J. Reynolds Tobacco Co.*, 439 Pa. 302, 268 A.2d 88 (1970); *Pegg v. General Motors*

---

**1.** The clause involved here did not explicitly provide for indemnification for East Texas' own negligence. For such a situation *see Westinghouse E. Co. v. Murphy, Inc.*, 425 Pa. 166, 228 A.2d 656 (1967).

*Corp.,* 258 Pa.Superior Ct. 59, 391 A.2d 1074 (1978). Neither appellant's answer and new matter, nor his case in chief, raised East Texas' negligence in selecting a truck. While it is true that such theory was pursued in opposition to the motion for a directed verdict and in post-verdict motions, the court had no evidence before it of negligence in this respect. In fact, a different theory had been pursued at trial, therefore it could properly direct a verdict in East Texas' favor on this point.

■ The remaining question as to negligence is whether East Texas' choice of tarp *to sell* to Lloyd could invalidate the indemnification provision. Pennsylvania law dictates that an indemnity clause will not be construed as protecting the indemnitee from its own negligence unless the agreement explicitly so provides. *Brotherton Const. Co. v. Patterson-Emerson-Comstock, Inc.,* 406 Pa. 400, 178 A.2d 696 (1962); *Potts v. Dow Chemical Co.,* 272 Pa.Superior Ct. 323, 415 A.2d 1220 (1979). As previously noted in citing the *Noralco* case, an indemnitor may avoid the consequences of a general indemnification clause by showing the indemnitee's negligence was "active" and not "passive".[2] In the case at hand, the trial court removed such determination from the jury, inferentially finding that East Texas' sale of the tarp did not amount to active negligence.

■ The existence of negligence is usually a question to be submitted to the jury upon proper instruction and a court should not remove such issue from the jury unless the facts leave no room for doubt. *Spraggins v. Shields,* 310 Pa.Superior Ct. 408, 456 A.2d 1000 (1983); *Hargrove v. From-*

**2.** Definitions for such terms were provided in *Potter Title and Trust Co. v. Young,* 367 Pa. 239, 242–43, 80 A.2d 76, 78–79 (1951):

> Generally speaking, the term "passive negligence" denotes negligence which permits defects, obstacles or pitfalls to exist upon the premises, in other words, negligence which causes dangers arising from the physical condition of the land itself. "Active negligence", on the other hand, is negligence occurring in connection with activities conducted on the premises, as for example, negligence in the operation of machinery or of moving vehicles whereby a person lawfully upon the premises is injured.

Quoted in *Noraclo supra.* 281 Pa.Super. at 473, 422 A.2d at 567.

*meyer & Co.,* 229 Pa.Superior Ct. 298, 323 A.2d 300 (1974). *See also Hamil v. Bashline,* 481 Pa. 256, 392 A.2d 1280 (1978); *Skalos v. Higgins,* 303 Pa.Superior Ct. 107, 449 A.2d 601 (1982). Here, the court held, as a matter of law, that providing allegedly defective or inadequate tarp did not equate "active" negligence on East Texas' part. We reluctantly find that the court erred in this respect.

While our research has failed to unveil any cases factually similar to the one at hand, *Safeco Ins. Co. of America v. Great American Ins. Co.,* 523 F.Supp. 983 (E.D.Pa.1981), lends support to our conclusion. In that case, a franchisor attempted to rely on an indemnity provision with its franchisee to protect it from liability for harm incurred by a customer who consumed the franchisor's product sold by the franchisee. Indemnification was denied since the franchisor's own conduct in manufacturing and providing the tainted product caused the harm.[3] While Lloyd's case may not be as clear as that presented in *Safeco,* it nonetheless was sufficient to raise a question as to East Texas' fault and therefore, the jury should have been permitted to determine the issue of negligence. Hence, we are constrained to vacate the judgment imposed upon the directed verdict and we remand for a new trial.

Having found a new trial is necessary, we nonetheless address the remaining contentions in the interest of judicial economy and so as to give guidance to the trial court.

 Appellant next argues that East Texas, by selling the tarp to him, modified the indemnification clause. He contends that by such conduct, East Texas waived the application of the parol evidence rule to the parties' agreement. The burden of proving modification is upon the party asserting such modification. *In Re Indus. Car Mfg. Co.,* 1 B.R. 339 (Bkrtcy.E.D.Pennsylvania 1979). *Nicolella v. Palmer,* 432 Pa. 502, 248 A.2d 20 (1968). Where there is conflicting evidence regarding a parol modification, it is

---

**3.** Analogous to this is the situation where a party attempts to impose a surcharge for delay resulting from that party's own action. *See C.J. Langenfelder & Son, Inc. v. Penn Dot,* 44 Pa.Cmwlth. 585, 404 A.2d 745 (1979); *Penn Dot v. W.P. Dickerson & Son, Inc.,* 42 Pa.Cmwlth. 359, 400 A.2d 930 (1979).

within the province of the jury to define its terms; unless the proponent's own version does not support the modification the court should not declare that a modification did not exist. *Curtin v. Marson*, 185 Pa.Superior Ct. 194, 138 A.2d 149 (1958). Here, we agree with the trial court that Lloyd's evidence fell short of demonstrating a modification of the indemnification clause.

■ Lloyd's next contention is that there was a factual issue as to whether an "act of God" was responsible for the damage.

> An act of God, as defined in the law, is an unusual, extraordinary, sudden, and unexpected manifestation of the forces of nature which cannot be prevented by human care, skill or foresight: 38 Am. Jur. 649, § 7; *Martin v. Philadelphia*, 54 Pa.Superior Ct. 563, 567. Was this storm so unusually severe or otherwise extraordinary as to warrant its characterization as an act of God?

*Carlson v. A. & P. Corrugated Box Corp.*, 364 Pa. 216, 219, 72 A.2d 290, 291 (1950). Appellant, himself testified that the rain storm he encountered "was a little worst" then he had previously encountered. He nonetheless continued driving. We must agree with the trial court, that as a matter of law, this "storm" did not rise to the level excusing Lloyd's delivery of damaged goods.

■ Appellant's further claim that his failure to read the contract did not, as a matter of law, raise a question of fact as to whether he intelligently, knowingly and voluntarily entered into the lease agreement, was correctly decided against him. Lloyd's testimony may be summed up as follows: he could read; he could have read the agreement if he had desired to; if he had read the front of the agreement, it would have referred him to the indemnification provision on the reverse side; appellant did not bother to read the document. In the absence of fraud, the failure to read a contract does not excuse noncompliance with the agreement. *Tose v. First Pennsylvania Bank, N.A.*, 648 F.2d 879 (3rd Cir.1981); *Estate of Brant*, 463 Pa. 230, 344 A.2d 806 (1975); *Sands v. Granite Mutual Ins. Co.*, 232

Pa.Superior Ct. 70, 331 A.2d 711 (1974). Accordingly, the jury was properly deprived of the responsibility of reviewing Lloyd's claim of ignorance.

 Appellant's final complaint pertains to the issue of damages. East Texas offered into evidence its cancelled check in the amount of $6,662.73 made payable to Monsanto. Defendant's exhibit No. 1 was a copy of a letter from Monsanto to East Texas indicating that Monsanto's claim was for $6,662.73. While appellant admitted that he had no basis to refute these figures, he did disagree with East Texas' claim that the whole shipment was damaged.[4] He contended that only six of thirteen pallets were damaged.[5] Furthermore, appellant takes note of Monsanto's letter in which it was stated "that the material sat for a long period of time." The court below held that the fact that the insulation may have sat unmoved for a period after it was unloaded did not indicate it incurred added damage. The trial judge observed that Lloyd could not dispute that the damage calculations were accurate and also discounted appellant's observation that, upon final destination, the pallets were segregated into two groups. The court emphasized that appellant had not inspected both groups to determine their condition.

Contrary to the trial court's findings, we believe the above testimony raised a factual dispute as to the extent of damage. The burden of proof in a contract action is upon the party alleging breach or default. *See Mellon Bank, N.A. v. Aetna Business Credit, Inc.,* 619 F.2d 1001 (3rd Cir.1980); *Unverzagt v. Prestera,* 339 Pa. 141, 13 A.2d 46 (1940). However, even if a plaintiff makes out his claim for the full amount "by uncontradicted and unimpeached testimony, the credibility of his witnesses and the weight of their testimony still would have been for the jury...." *Betzig v. Cook,* 175 Pa.Superior Ct. 188, 103 A.2d 283 (1954). Here Lloyd challenged East Texas' proof as to

4. The salvage value of $130 had been subtracted from the above figure.

5. Appellant's brief raises a question as to how many pallets were actually loaded on the truck. We find it unnecessary to resolve this confusion at this point in time.

damages, and offered his recollection of the damages, though without a dollar figure placed thereon. Hence, the amount of damages was in dispute, and for the jury to resolve. Compare, *Id.* (where defendant denied performance and contended he was entitled to credit for cost of completion, court erred in charging that defendant had offered no evidence as to value).

Judgment is vacated and the case is remanded for proceedings not inconsistent with this opinion.