Ruth J. GORDNER, Plaintiff,

v.

DYNETICS CORPORATION, Defendant,

v.

McMASTER–CARR SUPPLY COMPANY and B & G Manufacturing Co., Third–Party Defendants.

No. 4:CV–93–1124.

United States District Court, M.D. Pennsylvania.

Sept. 20, 1994.

John M. Humphrey, Rieders, Travis, Mussina, Humphrey & Harris, Williamsport, PA, for plaintiff.

Anthony Piazza, Murphy, Piazza & Genello, P.C., Scranton, PA, for original defendant Dynetics.

Norman D. Namey, Fine, Wyatt & Carey, P.C., Scranton, PA, for third-party defendant B & G Mfg.

Joseph P. Lenahan, Lenahan & Dempsey, Scranton, PA, for third-party defendant McMaster–Carr Supply Co.

## MEMORANDUM

McCLURE, District Judge.

### BACKGROUND:

On July 22, 1993, plaintiff Ruth J. Gordner initiated this action by filing a complaint against defendant Dynetics Corporation alleging that she suffered injuries caused by the breaking of a part on a machine made by Dynetics. Dynetics on September 28, 1993, filed a third-party complaint against McMaster–Carr Supply Co. and B & G Mfg. Co., as makers of the component part alleged to have failed.

Before the court are motions for summary judgment filed by all defendants, based upon plaintiff's failure to produce the allegedly defective product.

### DISCUSSION:

## I. SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that *there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*" Fed.R.Civ.P. 56(c) (emphasis added).

... [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex v. Catrett,* 477 U.S. 317, 323–324, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

The moving party bears the initial responsibility of stating the basis for its motions and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. He or she can discharge that burden by "showing ... that there is an absence of evidence to support the nonmoving party's case." *Celotex, supra,* 477 U.S. at 323, 325, 106 S.Ct. at 2552, 2553.

Issues of fact are genuine "only if a reasonable jury, considering the evidence presented, could find for the non-moving party." *Childers v. Joseph,* 842 F.2d 689, 694 (3d Cir.1988) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). Material facts are those which will affect the outcome of the trial under governing law. *Anderson, supra,* 477 U.S. at 248, 106 S.Ct. at 2510. In determining whether an issue of material fact exists, the court must consider all evidence in the light most favorable to the non-moving party. *White v. Westinghouse Electric Company,* 862 F.2d 56, 59 (3d Cir.1988).

## II. STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE DISPUTE

1. This action was filed by plaintiff against original defendant Dynetics in this court on or about July 22, 1993.

2. Plaintiff seeks recompense, through this action, for damages she claims to have suffered as a result of an incident that occurred on July 23, 1991.

3. Plaintiff's claim for damages is the result of the purported failure of a component part of an industrial machine that occurred on the above-referenced date while she was in the scope and course of her employment.

4. Plaintiff bases her claim against Dynetics on product liability theories of recovery.

5. Dynetics filed a third-party complaint naming B & G Mfg. Co. and McMaster–Carr Supply Co. as additional defendants on September 28, 1993, seeking contribution and/or indemnity.

6. Dynetics' third-party complaint against B & G and McMaster–Carr asserts product liability theories of recovery as the basis for its claims of contribution and/or indemnity.

7. The defect alleged to be the legal cause of plaintiff's harm and Dynetics' claims for contribution and/or indemnity concerns a metallic pin or stud which is alleged to have failed.

8. The metallic pin or stud at issue was not recovered after the incident, is lost and is therefore unavailable for inspection and/or testing by any of the parties to this action. There is no allegation that plaintiff or agents acting on behalf of plaintiff caused the loss of the metallic pin or stud at issue.

### III. ISSUE PRESENTED
### TO THE COURT

Defendants contend that they cannot be held liable for injuries caused by a defective product which is lost and therefore not available for examination and testing by experts. They base this contention on a line of cases discussing the concept of spoliation of evidence. Plaintiff responds that the instant case varies from the normal spoliation of evidence case because there is no allegation that plaintiff or anyone acting on her behalf caused the loss of the product. She claims that she can establish a case of product liability based upon a theory of recovery known as the malfunction theory of product liability.

Based upon the arguments of the parties, the issue presented to the court is: Under Pennsylvania law, can a plaintiff asserting a cause of action for product liability rely upon a malfunction theory for recovery when the plaintiff cannot produce for examination the product in question?

### IV. MALFUNCTION THEORY

In *Rogers v. Johnson & Johnson Products, Inc.,* 523 Pa. 176, 565 A.2d 751, 754 (1989), the Pennsylvania Supreme Court specifically adopted the malfunction theory of product liability. The court described the theory as follows:

This theory encompasses nothing more than circumstantial evidence of product malfunction. . . . It permits a plaintiff to prove a defect in a product with evidence of the occurrence of a malfunction and with evidence eliminating abnormal use or reasonable, secondary causes for the malfunction. . . . It thereby relieves the plaintiff from demonstrating precisely the defect yet it permits the trier-of-fact to infer one existed from evidence of the malfunction, of the absence of abnormal use and of the absence of reasonable, secondary causes. . . .

*Id.* (citations omitted).

Based upon *Rogers,* then, it is obvious that a plaintiff need not prove directly that a defect existed in the product. The question, then, is whether a plaintiff's ability to prove a defect indirectly, i.e. through a malfunction, extends to the point that the plaintiff can prove a defect without actually producing the allegedly defective product.

In *Troy v. Kampgrounds of America, Inc.,* 399 Pa.Super. 41, 581 A.2d 665, *allocatur denied,* 529 Pa. 642, 600 A.2d 1259 (1990) (table), the plaintiffs sued based upon an explosion in the laundry room of a campground. The plaintiffs sued the owners of the campground and the manufacturers of appliances located within the laundry room. Three days after the explosion, the building site was leveled and the remains of the appliances were destroyed, so that experts for some of the parties never had the opportunity to examine either the building or the appliances. 581 A.2d at 666. The trial court granted summary judgment in favor of the manufacturers of the appliances and their

components because the plaintiffs were unable to prove directly the existence of a defect in the appliances. 581 A.2d at 668.

In reversing, the Superior Court reviewed the standards for the malfunction theory of product liability, quoting directly from *Rogers. Troy*, 581 A.2d at 668 (quoting *Rogers*, 565 A.2d at 754). As material to the instant case, the *Troy* opinion is important in that the plaintiffs did not have direct evidence of a defect, in fact had argued that the failure of a particular valve had caused the explosion despite not having possession of the valve itself, and summary judgment was held to be inappropriate. It appears from this case, then, that a plaintiff need not produce the actual product in question to recover under the malfunction theory of product liability.[1]

Defendants, however, point to two cases which support their argument that, without producing the allegedly defective product, a plaintiff cannot recover. In *Roselli v. General Electric Co.*, 410 Pa.Super. 223, 599 A.2d 685 (1991), *allocatur granted*, 530 Pa. 645, 607 A.2d 255 (1992), *appeal discontinued*, plaintiffs sued for injuries received by one plaintiff when a coffee carafe shattered in her hand. The plaintiffs inadvertently disposed of the broken pieces of the carafe, and were unable to produce them for inspection by the defendant's experts. The trial court granted summary judgment in favor of the defendant for two reasons: (1) the defendant had been deprived of the most direct means of countering the plaintiffs' allegations; and (2) the defendant was deprived of the opportunity to determine the identity of the manufacturer of the glass carafe. 599 A.2d at 227.

In affirming the trial court as to the first reason, the Superior Court quoted *Martin v. Volkswagen of America*, 1989 WL 81296 (E.D.Pa.1989), as to the "public policy rationale" for not allowing recovery by the plaintiffs. That court had held that, when a plaintiff is responsible for the destruction of evidence, the plaintiff should not be permitted to recover. The Superior Court continued:

To permit claims of defective products where a purchaser of the product has simply thrown it away after an accident, would both encourage false claims and make legitimate defense of valid claims more difficult. It would put a plaintiff (or plaintiff's attorney) in the position of deciding whether the availability of the item would help or hurt his or her case. Where producing the product for defense inspection would weaken rather than strengthen a case, we unfortunately are obliged to conclude that some plaintiffs and attorneys would be unable to resist the temptation to have the product disappear.

*Roselli* 599 A.2d at 687–688 (quoting *Martin* at 3).

The plaintiffs in *Roselli* also argued that the malfunction theory should permit them to present their case to a jury, and relied upon *Troy* for support. The Superior Court distinguished *Troy* because, in that case, experts for the campground, experts for the supplier of gas to the laundry room, and State Police fire marshals had the opportunity to examine the appliances before they were destroyed. No expert in *Roselli* had the opportunity to examine the carafe. "*Troy* is analogous to criminal cases when tests had been conducted on evidence which was lost or destroyed before trial, but still may be admitted at trial, permitting the case to go to a jury." *Roselli*, 599 A.2d at 688.

However, the Superior Court then went on to note that the plaintiffs were unable to establish their *prima facie* case under the malfunction theory because they could not produce sufficient evidence to prove the absence of abnormal use or reasonable secondary causes. They were unable to account for several years' use of the product, and the coffee maker was scorched, charred and used frequently. 599 A.2d at 688–689. Therefore, the plaintiffs "failed to eliminate the realistic possibility the glass carafe broke because of

---

1. Recently, plaintiff provided to the court a copy of an opinion of President Judge Richard N. Saxton, Jr., of the Court of Common Pleas of Clinton County regarding a product liability action in which one of the defendants moved for summary judgment based upon the unavailability

of the allegedly defective product. *Linberg v. Keystone Stihl, Inc.*, Civ. No. 323–90 (C.P. filed September 8, 1994). While we do not rely upon this decision, we note that it is consistent with the conclusions reached by this court in the instant case.

its use and handling prior to the date of the incident." 599 A.2d at 689.

Finally, defendants rely upon the opinion of another judge of this court in *Sipe v. Ford Motor Co.*, 837 F.Supp. 660 (M.D.Pa.1993). The plaintiff was an employee of the Pennsylvania Turnpike Commission who was discussing the hydraulic systems of two trucks while standing between the trucks with a foot on the bumper of each. He claimed to have been injured by an electrical current resulting from defective wiring in a block heater and his stance on the two bumpers, which would have completed an electrical circuit. *Sipe*, 837 F.Supp. at 660.

After the accident, the Turnpike Commission repaired the allegedly defective block heater. The defendant moved for summary judgment because it did not have access to the allegedly defective product. The court granted summary judgment, stating, "Pennsylvania courts have recognized a public policy rule against allowing products liability cases to go forward when the product itself is unavailable for inspection." *Id.* Relying upon *Roselli*, the court determined that, whenever a defendant is unable to examine the allegedly defective product, the plaintiff should not be permitted to proceed with the case. *Sipe*, 837 F.Supp. at 660–661.

With all due respect to the courts which decided *Roselli* and *Sipe*, we disagree with those opinions for the reasons which we set forth at length below.

First, the "public policy rationale" discussed in *Roselli* and *Sipe* actually relates to the concept of spoliation of evidence. This concept was discussed at length in *Schmid v. Milwaukee v. Electric Tool Corp.*, 13 F.3d 76 (3d Cir.1994). Under both the substantive law of Pennsylvania and federal law of evidence, a court may sanction a party which, with notice that evidence is relevant to litigation, proceeds to destroy the evidence. 13 F.3d at 78. Sanctions which may be imposed for such conduct vary with the seriousness of the conduct, the degree of prejudice, and the availability of a lesser sanction which will protect the rights of the opposing party while deterring such conduct in the future. 13 F.3d at 79. At the lesser end of the sanctions scale is the "spoliation inference,"

whereby a court permits evidence of the destruction and allows the jury to infer that the evidence would have been unfavorable to the position of the party which destroyed it. 13 F.3d at 78. At the more extreme level, the court may prohibit the offending party from offering evidence necessary to prove its *prima facie* case. The latter sanction, in many cases, will lead to summary judgment against that party. 13 F.3d at 79 n. 2.

Based upon *Schmid*, and the cases cited therein, we conclude that the public policy rationale discussed in *Roselli* and *Sipe* is a misconstruction of the spoliation doctrine. Under Pennsylvania law, a plaintiff who destroys evidence is sanctioned for that conduct. As set forth in *Schmid*, the sanction varies depending on the conduct and the circumstances. In products liability cases, both Pennsylvania and federal courts applying Pennsylvania law have held consistently that a plaintiff who destroys the allegedly defective product will be precluded from proving the defect, which in turn leads to summary judgment against the plaintiff. Such a sanction is consistent with the *Schmid* rule.

However, there does not appear to be a basis for concluding that such a sanction would be appropriate when no conduct on the part of the plaintiff is the cause of the destruction of the allegedly defective product. In *Troy*, for example, the plaintiffs were not responsible for the destruction of the appliances or the laundry room, nor did they in any way have custody of either. That case was permitted to go to a jury, to which the plaintiffs would have the opportunity of presenting all of their evidence.

In *Roselli*, on the other hand, the plaintiffs had custody of the carafe and failed to preserve it. In *Martin*, the plaintiff sold the car which he claimed had a defective accelerator. In *Lee v. Boyle–Midway Household Products, Inc.*, 792 F.Supp. 1001 (W.D.Pa.1992), the plaintiff claimed to have been injured due to defective drain cleaner, but lost the container. Because there was a question as to whose product had injured the plaintiff, and the plaintiff could not produce the actual

container as a result of his own conduct, judgment was entered for the defendant.[2]

Features common to all of these cases are that: (1) the product's unavailability was caused by the plaintiff; (2) the defendant was prejudiced severely by the unavailability of the product; and (3) without direct evidence of the product, the plaintiff was unable to establish a *prima facie* case. As to the latter feature, in *Roselli*, the plaintiffs could not show that the carafe did not break due to prior use. In *Martin*, the plaintiff could not attribute the accident to a defective accelerator, as opposed to the myriad other causes of an automobile accident. In *Lee*, the plaintiff could not identify positively the manufacturer of the drain cleaner. Applying the *Schmid* rule, then, in each of these cases: the conduct was serious; there was severe prejudice to the defendants because of a lack of direct evidence with which to refute the plaintiffs' allegations; and lesser sanctions would not deter such conduct in the future because of the increased probability of a successful outcome of the litigation for the plaintiffs.

In short, then, the cases in which judgment has been entered in favor of defendants because the plaintiffs have lost or destroyed key evidence are consistent with the doctrine of spoliation of evidence. The reason for the sanctions imposed in such cases is to deter such conduct on the part of plaintiffs and to protect defendants from such conduct. This rationale is summarized in the very provision of *Martin* which is quoted in *Roselli*. To hold that no plaintiff may recover in a product liability action when the actual product which is alleged to be defective is unavailable, regardless of the conduct of the plaintiff, is an unwarranted expansion of the doctrine of spoliation of evidence.

Moreover, although *Schmid* deals specifically with spoliation of evidence, it also deals generally with the unavailability of evidence in a product liability case. The allegedly defective product in that case was an electric saw. The plaintiff's expert disassembled the guard on the saw, which guard was purported to be the defective component. The expert therefore altered the condition of the saw to some degree, but did not destroy it. The Third Circuit held that the case should not be dismissed because there was only limited fault and limited prejudice to the defendant. *Schmid*, 13 F.3d at 81.

*Roselli* and *Sipe*, for their part, stand for the proposition that the unavailability of evidence requires a blanket proscription against recovery by the plaintiff. *Schmid*, on the other hand, stands for the proposition that, when evidence is unavailable or not available in the same condition as at the time of the accident, the court must examine the reasons for and the effect of the unavailability, and react appropriately. In this context, we would note that *Sipe* was decided before the *Schmid* opinion was issued. As *Schmid* is a Third Circuit opinion, it is controlling on this court over both *Roselli* and *Sipe*.

The public policy rationale which defendants wish this court to apply also is inconsistent with the malfunction theory of product liability as announced in *Rogers*. The Pennsylvania Supreme Court specifically stated that this theory applies when the plaintiff is unable to produce direct evidence of a defect, but may do so through circumstantial evidence. Nothing in *Rogers* may be interpreted as precluding circumstantial evidence not in the form of the actual product which is alleged to be defective. In fact, in neither the Supreme Court opinion in *Rogers*, nor in the Superior Court opinion which was overturned, *Rogers v. Johnson & Johnson Products, Inc.*, 368 Pa.Super. 109, 533 A.2d 739 (1987), is there any mention of whether the plaster of Paris splint at issue was available for examination. It appears to this court that the splint's availability was immaterial; the plaintiffs in *Rogers* were proceeding under a malfunction theory, so that they were required to prove their case

---

**2.** Consistent with *Lee* is the more recent case of *DeWeese v. Anchor Hocking Consumer and Industrial Products Group*, 427 Pa.Super. 47, 628 A.2d 421 (1993), in which a busboy injured when a glass pitcher exploded could not identify the manufacturer of the pitcher because the remains had been disposed of, and the employer used pitchers made by a number of different manufacturers. While the plaintiff in *DeWeese* did not cause the unavailability of the allegedly defective product, its unavailability prevented identification of the manufacturer, precluding recovery by plaintiff against a particular manufacturer.

through circumstantial evidence, while the splint itself would be direct evidence. In short, the actual product which is alleged to be defective is more than is required to prove a case by circumstantial evidence. *Roselli* and *Sipe*, in requiring the actual product, are inconsistent with *Rogers*.

Finally, we would note that much of the reasoning of the court in *Roselli* is superfluous. In that case, the remnants of the carafe were in the possession of the plaintiffs following the accident, and the loss of the evidence is attributable to the plaintiffs. Consistent with the rationale of *Martin*, the court was justified in entering judgment in favor of the defendant, and there was no need to expand upon the rationale of *Martin* to include cases in which the plaintiff is in no way at fault in the loss or destruction of evidence.

The *Roselli* court's attempt to distinguish *Troy* also is not persuasive. While it is true that State Police fire marshals and experts for the supplier of gas and the campground owner were able to examine the appliances before they were destroyed, the supplier and the owner benefitted from the destruction of the evidence. Not surprisingly, the owner's expert concluded that the explosion was caused by a defective gas pilot light safety valve on the hot water heater. *Troy*, 581 A.2d at 668. Even if the owner was found liable, the manufacturer of the hot water heater would be liable for indemnification or contribution. The manufacturer, though, would be unable to rebut the direct evidence of a defect presented by the owner. The owner benefits because the manufacturer will be held liable, as does the plaintiff, whose case for a defect in the hot water heater in essence is presented by the owner. For all practical purposes, then, the case is indistinguishable from other cases in which the defendant is prejudiced by the loss or destruction of evidence, and the rationale of *Schmid* would apply.

In addition to all of the foregoing, we would add that a policy of barring recovery for a defective product whenever the product is not available is contrary to common sense. As stated by the dissent in *Roselli*, "Many times products are destroyed before suit is filed, yet this is not sufficient reason to bar plaintiffs from pursuing their rights." 599 A.2d at 689 (Del Sole, J., dissenting).

For example, if clothing is made of cloth which is highly flammable, plaintiffs would be precluded from recovering because the clothing would be destroyed in the flames. The same could be true of defective electrical products. If a person was injured by ingestion of tainted food or medicine, recovery would be barred because the process of digestion would consume the defective product. Products are consumed in innumerable ways: liquid products evaporate; gaseous products dissipate; solid products dissolve, are eaten, etc. Moreover, the possessor of a defective product would be required to preserve the product in its defective state, leading in many cases to an ongoing hazardous condition. It simply is impractical to expect every defective product to be preserved in its original state for purposes of litigation.

In short, then, we reject defendants' argument that Pennsylvania courts apply a blanket proscription against recovery for product liability when the allegedly defective product is unavailable. The malfunction theory of product liability is directly contrary to this proscription. Also, the Third Circuit requires an analysis of conduct leading to the unavailability of evidence in such a case, and its analysis precludes the policy argued by defendants. Finally, the policy argued by defendants runs contrary to common sense.

The motions for summary judgment will be denied.