J-A14012-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CHRISTIAN L. ANDRUSIS AND THERESA A. MACURAK, CO-ADMINSTRATORS OF THE ESTATE OF LAURA J. ANDRUSIS, DECEASED | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : : | |
| v. | : : : | No. 1242 WDA 2018 |
| MICROVENTION, INC., A CORPORATION; ALLEGHENY GENERAL HOSPITAL, A CORPORATION; ROBERT WILLIAMS, M.D.; AND ALLEGHENY RADIOLOGY ASSOCIATES, LTD., A CORPORATION | : : : : : : : | |

Appeal from the Judgment Entered August 30, 2018
In the Court of Common Pleas of Allegheny County
Civil Division at No(s):  GD-08-016008

BEFORE:  OTT, J., KUNSELMAN, J., and MUSMANNO, J.

CONCURRING AND DISSENTING MEMORANDUM BY KUNSELMAN, J.:

FILED: December 26, 2019

I agree with the majority's analysis on appellants' first two issues: informed consent and the admission of expert testimony on behalf of Dr. Robert Williams; Allegheny Radiology Associates, Ltd.; and Allegheny General Hospital (collectively "the original defendants").  I therefore join the lead Memorandum on those issues.

However, on the third issue, I believe the trial court's entry of a non-suit against the manufacturer was reversible error, warranting a new trial. Therefore, I must respectfully dissent on this issue.

The majority believes the trial court's entry of a non-suit against the manufacturer was proper because the plaintiffs introduced evidence of negligence in their case-in-chief; the majority holds that this evidence negated the malfunction theory[1] alleged by the original defendants, so that that theory could not proceed to the jury. Majority Memorandum at 28-29. However, I believe, under Pennsylvania precedent, the trial court should have presented both of the competing theories to the jury.

When an injury or death occurs during a medical procedure involving the use of a medical device, a plaintiff may initially choose to pursue a claim against either the doctor who performed the procedure or the manufacturer of the medical device, anticipating the original defendant will join the other party as an additional defendant. Under Pennsylvania Rules of Civil Procedure 2252(d) and 1706.1, when a party is joined as an additional defendant to a case, that party could be solely or jointly liable to the plaintiff on the claims

---

[1] As the majority notes, the malfunction theory is a form of products liability. Majority Memorandum at 21. To prove liability on that theory, a party must establish two elements: 1) circumstantial evidence that the product had a defect, even though the defect cannot be identified, and 2) evidence eliminating abnormal use or reasonable, secondary causes so that the jury can infer the defect caused the injury. **See Barnish v. KWI Bldg. Co.**, 980 A.2d 535, 541 (Pa. 2009).

asserted by an original defendant. Thus, once an "original defendant has properly joined an additional defendant according to the [Rules of Civil Procedure], the plaintiff's case may proceed just as if the plaintiff filed those claims directly against the additional defendant." ***202 Island Car Wash, L.P. v. Montridge Construction Inc.***, 913 A. 2d 922, 927 (Pa. Super. 2006).[2]

That is exactly what happened here. The decedent died during surgery when her doctor attempted to insert a coil to treat an aneurysm in the basilar artery at the base of her skull. Plaintiffs, the co-administrators of her estate, chose to file a complaint against the doctor and the hospital for negligence (*i.e.,* medical malpractice) based on the report of the plaintiffs' expert. The doctor and hospital then joined the manufacturer of the coil, Microvention, as an additional defendant and asserted a claim for products liability.

When both theories of liability are part of the same lawsuit, one filed by the plaintiff and one filed by the original defendant, the Supreme Court of Pennsylvania has held that it is the jury's prerogative to select between the competing factual theories of liablity. ***Rogers v. Johnson & Johnson***, 565 A.2d 751 (Pa. 1989). The allegation of negligence by one party does **not**

_____

[2] Indeed, when faced with the decision to sue the manufacturer or the doctor, a plaintiff strategically may choose to initiate the lawsuit against whichever party they believe is more culpable, knowing that party might proceed against the other. Once the other party is joined in the lawsuit, the rules of procedure give the plaintiff the benefit of having the both defendants on the verdict slip before the jury; the plaintiff only has to try the case against one case, and while one of the defendants tries the other case.

negate a products liability claim by another party. *Id.* These two, alternative theories are a dispute of pure fact.

In ***Rogers***, the plaintiff-husband, Price Rogers, suffered severe burns from a plaster splint that a resident applied to his broken leg. He and his wife chose to pursue a claim against the manufacturer, Johnson & Johnson, claiming the cast was defective and had caused his injuries. The manufacturer denied liability and filed a cross-claim against the two hospitals, alleging negligence in the use of the product.[3]

The Rogers pursued their case of product malfunction, among others, against Johnson & Johnson. Significantly, they presented evidence eliminating medical malpractice as the cause of the burns. Johnson & Johnson then introduced its own expert testimony blaming medical malpractice for the plaintiff's harm. The jury found that the product malfunctioned but did not answer any questions regarding negligence. Johnson & Johnson appealed.

The Superior Court reversed and granted a new trial. We opined, because the manufacturer had adduced sufficient evidence of negligence by the doctor to submit that issue to a jury, the plaintiffs (who claimed a product defect) had eliminated all reasonable, secondary causes for the malfunction.

---

[3] In ***Rogers***, the "doctor" who applied the cast was a resident from Thomas Jefferson University Hospital, who was on rotation at Lankenau Hospital. Instead of filing a claim against the doctor and the hospital where plaintiff was treated, the plaintiff filed claims against both hospitals. However, at trial, plaintiffs only pursued their products liability claim against Johnson & Johnson, and Johnson & Johnson pursued the cross claim of negligence against the hospitals.

As a result, we held that the manufacturer was entitled to a directed verdict on the product liability claim. ***Rogers***, 533 A.2d 739 (Pa. Super. 1987).

Our Supreme Court reversed us and found that ***both*** the malfunction theory and the medical malpractice theory should have gone to the jury. ***Rogers***, 565 A.2d 751 (Pa. 1987). Even though one party produced evidence of a doctor's negligence, the High Court observed:

> As the Superior Court would have it, [] Johnson & Johnson was entitled to a directed verdict on the malfunction issue once it introduced sufficient evidence of secondary causation, *i.e.*, medical malpractice, to permit this defense to go to the jury. We cannot agree with this circular logic as it essentially mandates the grant of a directed verdict should the defendant manufacturer produce any evidence of reasonable, secondary causation.

***Id***. at 754.

The Supreme Court specifically held that a directed verdict in favor of the manufacturer was legal error. It reasoned:

> [A] directed verdict should not be granted where there are factual questions to be submitted to the jury. If there is any conflict in the evidence, particularly when the evidence consists of oral testimony, if different inferences may reasonably be drawn from the evidence, or if the court would be called upon to pass upon the credibility of witnesses or of their testimony, the case is not a proper one for a directed verdict. In this instance the plaintiffs' evidence refuted medical malpractice while the defendant manufacturer's evidence supported it. Depending on which version of the facts the jury chose to believe, which witnesses it deemed credible, in other words how it resolved conflicting evidence, it could have returned a verdict for either party on the issue of malpractice.

***Id.,*** at 755 (citations omitted).

Here, I fear the trial court and the majority repeat the error this Court made in **Rogers**. Notably, the procedural posture of **Rogers** was the exact flip of how the parties presented their competing, factual theories in this case. Here, the plaintiff elected to sue the doctor/hospital. They in turn sued the manufacturer.

In both cases, however, one party pursued a claim of negligence, and one party pursued a claim of product defect. When the trial court directed a verdict for the manufacturer on the malfunction theory here, merely because there was some evidence of negligence in the case, it erroneously barred the jury from resolving the two competing theories of liability and deciding which version of the facts it believed. Under **Rogers**, because the original defendants presented the claim of product malfunction, so long as **their** expert presented a case-in-chief free of secondary causes, the claim of product malfunction should have gone to the jury. In other words, evidence of negligence in plaintiffs' medical malpractice claim cannot negate, **as a matter of law**, the doctor/hospital's claim of product malfunction.

This is so because the jury could (and, here, did) reject the negligence claim, but it might still find that a product malfunction caused the death of the decedent, depending on which version of facts it believes. **See Rogers**, 565 A.2d at 755. In the matter at car, the jury never had that choice. It found the original defendants were not negligent, but the trial court wrongly deprived it of option to find that the coil malfunctioned.

I believe the plaintiffs should have had an opportunity to recover under either theory – *i.e.* their own theory of negligence or the original defendants' theory of product malfunction. As noted above, the plaintiffs' case against Microvention, whom the original defendant properly joined as an additional defendant, should have proceeded to the jury just as if the plaintiffs filed those claims directly against Microvention. **See 202 Island Car Wash, L.P.,** 913 A.2d at 927. The plaintiffs are not, as the majority claims, "attempt[ing] to 'back door' a malfunction theory claim through the [original] Defendants' case-in-chief." Majority Memorandum at 28.

The majority distinguishes **Rogers** from this case, because in **Rogers** the plaintiffs pursued a product-defect theory, while the original defendant (the maker of that product) pursued a malpractice claim. **Id.** ("This is certainly not the same situation as in **Rogers**, where the 'alternative theory of negligence' was presented by the defendant").[4] In my opinion, this is a

_____

[4] The majority relies on a footnote from **Rogers** to support this conclusion. Majority Memorandum at 28. However, the **Rogers** Court did **not** hold that a plaintiff could never recover under both a negligence and a products liability claim. To the contrary, the High Court indicated that a plaintiff might be able to recover under alternative theories of product malfunction and negligence. As Supreme Court observed:

Nor can we agree with the Superior Court's tacit conclusion that a plaintiff who has presented a malfunction case will always be precluded from proceeding upon an alternate theory of negligence. It is altogether possible that a plaintiff's injuries could be caused **jointly** by a defective product **and also** by third party negligence so long as the negligence does not constitute **a supervening cause** of the malfunction. "Given the occurrence of

distinction without a true difference. We judges should not hold which theory the plaintiffs choses to pursue initially against them. Under the majority's logic, the plaintiffs in *Rogers* arguably were trying to "back door" a negligence claim through the defendants' case in chief. There, the Supreme Court did not see this separate theory as a "back-door" claim, but rather, two alternative theories of liability, both of which should proceed to the jury. Moreover, the Supreme Court gave no indication that a plaintiff's ability to recover under these alternative theories of liability was limited only to cases where the plaintiff filed the products liability claim and the original defendant filed the negligence claim. The majority's reading of *Rogers* to impose such a limitation is, in my mind, erroneous. In short, which theory the plaintiff chooses to pursue in the first instance is irrelevant.

---

a malfunction, the [alleged] negligence assumes legal significance only if it was a superseding cause. . . . Questions of proximate causation should normally be left to the finder of fact." *Kuisis*, 457 Pa. at 330, 319 A.2d at 920.

*Rogers*, 565 A.2d at 755 (citation and internal punctuation omitted) (emphasis added). The relevant footnote came immediately after this quote, and simply gave an example of when Mr. Rogers might have recovered against **both** the doctor **and** the manufacturer. "***In this instance, for example***, if the jury had chosen to believe [the manufacturer's] evidence that [the doctor's] failure to heed Mr. Rogers' complaints regarding the sensation of warmth constituted negligence[,] such negligence would not supervene the cause of Mr. Rogers' injuries, namely the defective material of which the splint. was made." *Id*. at n.7.

In sum, while I concur with the majority's decision on the issues of informed consent and expert testimony, I must respectfully dissent on the issue of a non-suit against Microvention.  Based on *Rogers*, the plaintiffs were entitled to have the jury consider both the negligence theory against the original defendants and the malfunction theory against Microvention.  As such, I would reverse and order a new trial as to all parties.